SMITH v ALLENDALE MUTUAL INSURANCE COMPANY

1. JUDGMENT—JUDGMENT NOTWITHSTANDING VERDICT—APPEAL AND
   ERROR—STANDARD OF REVIEW—JURY QUESTIONS.

   The proper standard for review of a judgment notwithstanding
   the verdict is whether the evidence at trial is sufficient to
   create jury questions on the appropriate legal issues.

2. INSURANCE—WORKMEN'S COMPENSATION—TORTS—NEGLIGENCE—
   COMMON-LAW LIABILITY.

   A workmen's compensation insurance carrier is not immune from
   common-law tort liability for its own negligence.

3. TORTS—NEGLIGENCE—DUTY—REASONABLE CARE—RISK OF HARM—
   RELIANCE.

   One who undertakes, gratuitously or for consideration, to render
   services to another which he should recognize as necessary for
   the protection of a third person or his things is subject to
   liability to the third person for physical harm resulting from
   his failure to exercise reasonable care to protect his undertak-
   ing, *if* (a) his failure to exercise reasonable care increases the
   risk of harm, *or* (b) he has undertaken to perform a duty owed
   by the other to the third person, *or* (c) the harm is suffered
   because of reliance of the other or the third person upon the
   undertaking.

4. INSURANCE—WORKMEN'S COMPENSATION—DUTY—SAFE WORK ENVI-
   RONMENT—INSURER'S OBLIGATION.

   The relationship of insurance carrier to employer does not, by
   itself, create any duties on the part of the insurance carrier to
   assist the employer in its obligation to provide a safe place to
   work for its employees.

REFERENCES FOR POINTS IN HEADNOTES
[1] 46 Am Jur 2d, Judgments § 106 *et seq.*
[2] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 57.
   82 Am Jur 2d, Workmen's Compensation § 580 *et seq.*
[3] 57 Am Jur 2d, Negligence §§ 45, 46.
[4, 5] No reference.

5. INSURANCE—FIRE INSURANCE—INSPECTIONS—EMPLOYEE SAFETY—
    DUTY OF INSURER—FIRE HAZARDS—ELECTRICAL DEFECTS.

Periodic inspections of an insured employer's plant for fire haz-
ards by its fire insurance carrier which were not intended or
represented to be for the purpose of improving employee safety
do not give rise to a duty on the part of the carrier to detect
defects in electrical equipment for cranes which contained no
combustible material, and which were inspected and serviced
solely by the employer.

Appeal from Wayne, Roland L. Olzark, J. Sub-
mitted June 14, 1977, at Detroit. (Docket No.
29240.) Decided October 25, 1977. Leave to appeal
applied for.

Complaint by Nobel E. Smith, III, and Amelia R.
Smith against Allendale Mutual Insurance Com-
pany and Factory Mutual Engineering Association
for damages for injuries while operating a crane
which malfunctioned and alleging that the acci-
dent resulted from negligent fire inspections.
Third-party complaint by defendants against Great
Lakes Steel Corporation, employer, for indemnifi-
cation. Motion by Great Lakes Steel for directed
verdict of no cause of action. That directed verdict
granted. The jury found for the plaintiffs. Defend-
ants moved for judgment notwithstanding the ver-
dict. That motion granted. Judgment for defend-
ants. Plaintiffs Smith appeal and defendants Al-
lendale Mutual Insurance Company and Factory
Mutual Engineering Association cross-appeal. Af-
firmed.

*Goodman, Eden, Millender & Bedrosian* (by *Er-
nest Goodman, James A. Tuck,* and *Joan Lovell,
Richard M. Goodman* of counsel), for plaintiffs.

*Davidson, Gotshall, Kohl, Secrest, Wardle,
Lynch & Clark,* for defendant and third-party
plaintiff.

*Vandeveer, Garzia, Tonkin, Kerr & Heaphy,* for Great Lakes Steel Corporation.

Before: R. M. MAHER, P. J., and N. J. KAUFMAN and F. J. BORCHARD,* JJ.

PER CURIAM. Plaintiff Nobel Smith was seriously injured in the course of his employment at the Great Lakes Steel Corporation. Smith was employed as an overhead crane operator in a particular building in the Great Lakes Steel complex. While in the process of making a lift, he heard a crackling noise and saw sparks flying. Concerned for his safety, Smith climbed over the controls, hung out of the window of the crane cab and dropped to the floor below, seriously injuring himself.

The cause of the sparking was determined to be a shunt cable which parted and made contact with the crane cab, creating an arc. The arc burned a two inch diameter hole through the wall of the cab before extinguishing itself.

Plaintiffs brought suit against Allendale Mutual Insurance Company, Great Lakes' fire insurance carrier, and its agent, Factory Mutual Engineering Association, who conducted periodic inspections of Great Lakes Steel for fire hazards. Plaintiffs' theory of the case was that the defendants were negligent in failing to discover and notify Great Lakes of the existence of a defective ungrounded electrical system in the area of the plant in which the accident occurred.

A jury trial was held in Wayne County Circuit Court which ended in a verdict for the plaintiffs in the combined amount of $860,000. Thereafter, the defendants moved for a judgment notwithstanding

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the verdict which was granted. Plaintiffs appeal. We affirm.

The proper standard for review of the grant of a judgment notwithstanding the verdict is whether the evidence at trial is sufficient to create jury questions on the appropriate legal issues. *Andrews v Insurance Company of North America,* 394 Mich 464; 231 NW2d 645 (1975).

Plaintiffs' legal theory is derived from the case of *Ray v Transamerica Insurance Company,* first reported at 10 Mich App 55; 158 NW2d 786 (1968), and later at 46 Mich App 647; 208 NW2d 610 (1973).

In *Ray v Transamerica,* 10 Mich App 55; 158 NW2d 786 (1968), an injured employee brought an action against the defendant workmen's compensation carrier. The theory of the case was that the defendant voluntarily undertook to provide safety inspection services and that it negligently performed this undertaking. The defendant moved for summary judgment based on a statute now repealed. The motion was denied, and, on interlocutory appeal, the Court held that the workmen's compensation carrier was not immune from common-law tort liability for its own negligence.

In *Ray v Transamerica,* 46 Mich App 647, 657; 208 NW2d 610 (1973), the Court adopted the rule enunciated in 2 Restatement Torts, 2d, § 324A, p 142:

" 'One who undertakes, gratuitously or for consideration to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, *if*
" '(a) his failure to exercise reasonable care increases the risk of harm, *or*

" '(b) he has undertaken to perform a duty owed by the other to the third person, *or*

" '(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.' "

Plaintiffs' suit was predicated on subparagraph (b). They claimed that the defendants, by conducting inspections of the Great Lakes Steel complex, had undertaken to assist Great Lakes in its duty to provide a safe place to work to its employees.

Liability under subparagraph (b) was discussed by the Court in the second *Ray* case:

"The further issue which must be resolved is whether plaintiff's theory that defendant had undertaken to furnish safety inspection, giving rise to a duty to use reasonable care on behalf of the plaintiff, is supported by the record.

"Normally the issue of duty owed a particular person is a question for the trial court. *Elbert v Saginaw,* 363 Mich 463, 476 (1961). However, where, as here, the existence of a relationship between the parties determines the duty owed, and that relationship is not clear, the issue of duty may be properly given to the jury. *Bonin v Gralewicz,* 378 Mich 521, 526–527 (1966).

"This is not to say that a mere failure to suggest or recommend a safety change would impose a duty and liability. It would not. On the facts adduced, the jury must have found that defendant had voluntarily and *actively* undertaken to assist Chesley Industries in performing the obligation owed by every employer to his employees—to provide a safe place to work. Having undertaken the duty, defendant is held to a standard of due care.

"It is clear to us that the jury found a duty existed on the part of the defendant, that duty extended to the plaintiff because the plaintiff was clearly within the orbit of risk created by the negligent performance of the duty undertaken. The record supports this finding of the jury." (Footnote omitted.) 46 Mich App at 653–654.

Thus, our inquiry is whether there is any evidence that the defendants voluntarily and actively undertook to assist Great Lakes in its obligation to provide a safe place to work for its employees. We find that the record is devoid of any such evidence.

The relationship of insurance carrier to employer does not, by itself, create any duties on the part of the insurance carrier. This is especially true in the present case where a fire insurance carrier, rather than a workmen's compensation carrier, is involved. Since no duty was created by the relationship of the parties, the carrier must be shown to have taken some affirmative action to find a legal duty. *Andrews v Insurance Co of North America,* 60 Mich App 190, 197; 230 NW2d 371 (1975), *remanded for reconsideration,* 394 Mich 464; 231 NW2d 645 (1975).

Allendale Mutual did provide fire insurance to Great Lakes Steel, and its agent, Factory Mutual, did inspect the plant for fire hazards; however, the inspections were limited in both scope and purpose.

Factory Mutual was concerned with the detection of fire hazards and employed individuals who were specially trained in this area. The employees of Factory Mutual had no training in the area of employee safety nor did they hold themselves out as making inspections for this purpose. Factory Mutual did not inspect the electrical equipment or the cranes because they contained virtually no combustible material. Furthermore, it did not make any difference to Factory Mutual if the circuits around the cranes were grounded or ungrounded because neither posed a fire hazard.

Great Lakes Steel, on the other hand, had an electrical department which was responsible for keeping the equipment in good operating order by

making inspections and repairs. The cranes were inspected by Great Lakes on a regular basis. Great Lakes also had an inspection program to detect hazardous conditions as relating to employee safety. Moreover, a representative of Great Lakes testified that he did not expect Factory Mutual to tell him how the cranes should be maintained, wired, or what fusing, if any, should be utilized. Also, any revision in the electrical circuit in the plant would be designed, planned, and performed by the various departments of Great Lakes Steel. Thus, Great Lakes did not expect any assistance from the defendants in providing a safe place to work for its employees.

We recognize that inspections may be limited. Any duty assumed by the defendants did not extend to the plaintiffs because employees were not included within the orbit of risk created by the duty assumed. We find that the inspections conducted by the defendants for fire hazards were not undertaken for the purpose of assisting Great Lakes Steel in providing a safe place to work for its employees. Since defendants assumed no duty to the plaintiffs, there was no jury question presented on the allegation of negligence. The trial judge was correct in granting a judgment notwithstanding the verdict.

Affirmed.